UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA CORSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 1:16-CV-00545(AKH) |
| BROWN HARRIS STEVENS OF THE HAMPTONS, LLC, | ) |
| Defendant. | ) |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to Section 3Biii of the Court's Bench Rules, Plaintiff Lisa Corson submits these proposed findings of fact and rulings of law.

**I.  FINDINGS OF FACT**

1. Lisa Corson ("Plaintiff" or "Ms. Corson") is a professional photographer, living in Ojai, California. (Pretrial Order ("PO") Section viii (1)).

2. Defendant Brown Harris Stevens of the Hamptons, LLC ("Defendant" or "BHSH"), a New York limited liability company, is a New York State licensed real estate brokerage whose main office is located at 27 Main Street, East Hampton, New York 11937, in Suffolk County. It specializes in sales and rentals in East Hampton and vicinity. It maintains a website: https://bhshamptons.com. (*Id.* Section viii (2)).

3. BHSH is owned 78% by Terra Holdings, LLC, which also owns an affiliated group of companies involved in the real estate brokerage business, among other businesses, including Halstead Property LLC. (*Id.* Section viii (2)).

4. Ms. Corson worked for the Wall Street Journal as a photo editor between July 2010 and March 2013. (Trial Testimony).

5. Since leaving the employ of the Wall Street Journal and developing an independent photography business, Ms. Corson has received photography assignments from the Wall Street Journal from time-to-time. (PO Section viii (5)).

6. Ms. Corson entered a Freelance Agreement dated March 2, 2013 with the Dow Jones & Company, Inc., which publishes the Wall Street Journal, in print and on-line versions.. (PO Section viii (4)).

7. Based on her experience as a staff photographer, and freelance photographer, for the Wall Street Journal, Plaintiff expected and understood that the Wall Street Journal's practice would be to direct anyone seeking permission to copy or use a story published by the Wall Street Journal to contact Ms. Corson (or any other photographer) directly in order to receive permission to copy or use a photograph accompanying a Wall Street Journal story. (Trial Testimony).

8. Ms. Corson has never experienced the Wall Street Journal unilaterally providing permission to anyone seeking to copy or use a photograph that she licensed to the Wall Street Journal for use with a story appearing in the paper, and she expects it would not do so. (Trial Testimony).

9. In her experience as a staff photographer and free-lance photographer working with the Wall Street Journal, Ms. Corson has always been given credit for photos when published by the Wall Street Journal, and that credit appears with the photos itself. (Trial Testimony).

10. Ms. Corson is willing to provide freelance photography services and a license to use her photos to the Wall Street Journal for a significantly reduced fee, because the wide and

favorable exposure and publicity associated with her photography when it is displayed by a highly regarded publication, such as the Wall Street Journal, along with a credit given to her as a photographer appearing with her photographs. (Trial Testimony).

11. Ms. Corson expects that the benefit to her business of this widespread and favorable exposure justifies substantially reduced charges to the Wall Street Journal itself, and she is aware that there is a lot of competition among photographers to get their work published by the Wall Street Journal. (Trial Testimony).

12. In March 2015, the Wall Street Journal engaged Ms. Corson as a freelance photographer to photograph a property in Beverly Hills, California, in connection with a planned article on high-end house projects. (Trial Testimony).

13. Specifically, on March 13, 2015, Plaintiff, at the request of the Wall Street Journal, took, among others, a photograph of a swimming pool and bar area at a house located at 9945 Beverly Grove, Beverly Hills, California. (PO Section viii (6)).

14. In order to complete this photography project, Ms. Corson made efforts to access the property and to set up interesting views of the completed house, highlighting the expensive and luxurious aspects of the project, so that her photographs would fit with the planned article. (Trial Testimony).

15. As a result of her efforts, Ms. Corson provided a number of photographs to the Wall Street Journal. (Trial Testimony).

16. The Wall Street Journal selected four of Ms. Corson's photographs, including the photograph at issue in this lawsuit, to accompany an article published in its print and on-line versions entitled "The Race To The $100 Million Spec House" ("WSJ Article"). (PO Section viii (8)).

17. Ms. Corson provided a license to the Wall Street Journal to use her photographs in its print and on-line publications, but she retained ownership of the copyrights in her photographs. (Trial Testimony).

18. On March 18, 2015, Ms. Corson applied for registration of the photographs taken as a result of her assignment by the Wall Street Journal, ultimately obtaining Copyright Registration VAu 1-206-511, with an effective date of March 18, 2015, from the United States Copyright Office. (PO Section viii (7); Plaintiff's Ex. 1).

19. Ms. Corson has published her copyrighted photograph on her website with the copyright registration notice identified in the Copyright Act, 17 U.S.C. § 401. (Plaintiff's Ex. 16).

20. Ms. Corson's practice is to retain ownership of, and register her, copyrights in the photographs she creates and licenses to various publications, because she maintains an active business in secondary licenses of her works. (Trial Testimony).

21. Ms. Corson publishes her portfolio of photos on her own website and holds them out for license. In Ms. Corson's experience the exposure to her work generated by the publication and credit of her work by the initial licensee leads others to find her, or her website, and inquire about the potential to obtain licenses for the copying and use of her photographs. This is a significant aspect of Ms. Corson's photography business. (Trial Testimony; Plaintiff's Exh. 16).

22. The WSJ Article as published on-line was accompanied by nineteen photographs in a slide-show as well as a video. (PO Section viii (7)).

DM2\8490093.1

23. The video and a number of the photographs in the slide show were created by Ms. Corson and the Wall Street Journal published credit for those photographs identifying Ms. Corson as the photographer. (Trial Testimony).

24. Ms. Corson's photographs, along with the other photographer's photos, were presented in a slide-show format to accompany the WSJ Article as published on-line. (PO Section viii (9)). As a result, different viewers of the WSJ Article on-line would see different photographs when they opened and read that article. To see all nineteen, a viewer could open the slide-show and scroll through them all. (Trial Testimony).

25. At the time the WSJ Article was published, the Defendant's website included a blog called the "Talk of the Town." (PO Section viii (7)).

26. That section of Defendant's website was managed by its Director of Advertising, Eric Davidowicz. (Plaintiff's Ex. 14 ("Davidowicz Tr.") at 11:16-13:9).

27. Mr. Davidowicz was given the responsibility to populate that section of the Defendant's website with content. (*Id.* at 43:20-44:2, 44:24-45:11).

28. One of the Defendant's goals in maintaining this blog on its website was to grow its brand, similar to all other marketing and advertising conducted by the Defendant. (*Id.* at 53:8-12).

29. On or about March 20, 2015, Mr. Davidowicz saw the WSJ Article and decided to copy the article and post it on Defendant's website. (*Id.* at 26:6-9, 27:12-14).

30. Mr. Davidowicz's purpose in copying and posting the WSJ Article to the Defendant's website and the plaintiff's photograph to accompany it, is that he believed it fit with Defendant's luxury real estate market focus. (*Id.* at 56:6-20).

31. To do so, Mr. Davidowicz made a copy of the WSJ Article, as printed on-line on the Wall Street Journal website, and pasted that copy directly to the Defendant's website. (*Id.* at 27:19-22; 37:9-20).

32. Mr. Davidowicz also decided to copy the Plaintiff's photograph at issue in this case from the Wall Street Journal website and post it to the Defendant's website, because it caught his eye and he thought it would go well with the article. (*Id.* at 29:15-30:5).

33. Mr. Davidowicz did not copy and post to the Defendant's website any of the other 18 photographs, or the video, that accompanied the WSJ Article on the Wall Street Journal website. (Plaintiff's Ex. 5).

34. The plaintiff's copyrighted photograph at issue in this case did not copy and follow the WSJ Article automatically, when Mr. Davidowicz copied and pasted the WSJ Article to the Defendant's website. Instead, Mr. Davidowicz had to make a separate copy of the plaintiff's photograph and store it on his work computer, then upload it onto the Defendant's website through an image uploader. (*Id.* at 37:21-25; 38:9-13).

35. When copying the WSJ Article and separately copying the plaintiff's copyrighted photograph at issue in this case, to post them on the Defendant's website, Mr. Davidowicz never reviewed the Wall Street Journal's licensing policy. (*Id.* at 28:22-25).

36. Mr. Davidowicz did not contact anyone at the Wall Street Journal to obtain permission to copy the WSJ Article. (*Id.* at 28:18-21).

37. The Defendant did not pay anything to the Wall Street Journal for the copy of the WSJ Article it pasted to its website. (*Id.* at 29:2-4).

38. Although the Wall Street Journal website identified Lisa Corson as the photographer of the photo that Mr. Davidowicz separately copied to uploaded to the Defendant's

DM2\8490093.1

website to accompany his copy of the WSJ Article, Mr. Davidowicz never contacted Ms. Corson to seek her permission. (*Id.* at 32:11-14).

39. Mr. Davidowicz copied numerous other articles and photographs from different on-line publishers, and similar to his actions regarding the WSJ Article and Plaintiff's photograph, he did not seek any permission for the use of those materials on Defendant's website. (*Id.* at 28:4-7, 58:9-60:16).

40. Although the Wall Street Journal website visibly credited Ms. Corson as the photographer along with displaying her photo, Mr. Davidowicz did not credit Ms. Corson as the photographer when uploading her photo for display on the Defendant's website. Mr. Davidowicz claimed that he did not do so because he did not know how to provide that credit in the software he used to post the photo, and he did not think it was necessary, because he put a link on the Defendant's website back to the Wall Street Journal website. (*Id.* at 31:18-32:5, 88:4-24).

41. At the same time, Mr. Davidowicz did not believe that he knew the technical side of the Defendant's website (*Id.* at 55:17-56:5) and he did not ask anyone who was responsible for the software program he used whether it could support adding a credit for the photographs he uploaded. (*Id.* at 81:11-24).

42. The link that Mr. Davidowicz included on the Defendant's website connected to the WSJ Article, but because the Plaintiff's photo at issue in this case was part of a slide show on that website, a viewer clicking on the link would not necessarily see that image. If not, a viewer would have to find the image within slide show in order to see the photographer's credit identifying the Plaintiff. Mr. Davidowicz did not include a link to the Plaintiff's specific photograph within that slideshow on the Defendant's website. (Trial Testimony).

7
DM2\8490093.1

43. Mr. Davidowicz was aware that Defendant maintained a Computer Use Policy that stated, in part:

> Users may not reproduce or use Information received through Computer Resources that may infringe on the intellectual property rights (copyright, trademark, or patent) of others. In their use of the Computer Resources, Users must comply with all software licenses, copyrights and all other state, federal and international laws governing intellectual property and online activities… Users may not use, copy or distribute copyrighted or otherwise restricted information from the Internet…. (*Id.* at 62:6-63:6, 63:13-18, 63:22-25, 64:22-65:25; Plaintiff's Ex. 8 at Section A, second paragraph).

44. Mr. Davidowicz managed a staff of a few employees at BHSH and he also worked with the Director of Public Relations and Marketing Department employees at BHSH's parent company, Terra Holdings. (*Id.* at 12:22-13:9, 15:15-16, 15:21-16:17). Although Mr. Davidowicz has had conversations with superiors at BHSH regarding his maintaining the Talk of the Town blog and putting content in it, they had no discussion about the process he would use to do that. (*Id.* at 28:8-17).

45. Although Mr. Davidowicz copied dozens of articles and related materials from various on-line publications and posted them to the Defendant's website over the years (Plaintiff's Ex. 6), the Defendant provided no budget to Mr. Davidowicz for obtaining the rights to copy or use anyone else's content. (*Id.* at 60:22-61:2).

46. Although he was given responsibility for populating the Defendant's Talk of the Town blog on its website with content taken from other sources on the Internet, Mr. Davidowicz never spoke with the General Counsel for BHSH or its parent company, nor did he speak with anyone else, about copyright related issues. (*Id.* at 67:24-68:13).

47. Following receipt of a notice of copyright infringement from Plaintiff's counsel on January 4, 2016, the General Counsel for BHSH's parent company, Terra Holdings,

8

responded by representing that the Plaintiff's copyrighted photo appeared on the Defendant's website "only briefly, in March or April of 2015." (Plaintiff's Ex. 11).

48. In fact, the Defendant did not remove the Plaintiff's copyrighted photograph from its website until after receiving Plaintiff's complaint in January 2016. (Davidowicz Tr. at 40:17-22).

49. Defendant's response to Plaintiff's notice of infringement refused to offer the Plaintiff any license fee, or other payment, for its use of her copyrighted photo, and instead directed Plaintiff to address her claim to the Wall Street Journal. (Plaintiff's Ex. 11).

50. Defendant's response to Plaintiff's notice of infringement stated that the removal of the Plaintiff's photo from Defendant's website was only "an accommodation," that Defendant "reserved all rights and nothing should be regarded as an acknowledgement of [Plaintiff's] claim." (*Id.*).

51. Defendant's response to Plaintiff's notice of infringement refused to acknowledge that Plaintiff owned the copyrights in the photo at issue, or to agree that Defendant had no right to renew its display of the photo whenever it chooses. (*Id.*).

52. Similarly, Defendant's response to the Plaintiff's Complaint, filed on April 1, 2016, included a number of affirmative defenses asserting that Defendant had a right to copy and display Plaintiff's copyrighted photo, and that it was not liable for infringement. (Answer, Electronic Docket Document 9, at the First, Second, Seventh, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses).

53. It was not until January 24, 2017, in connection with the Plaintiff's motion for summary judgment, that Defendant finally conceded that Plaintiff's copyright is valid and

9

Defendant did not have a right to copy and display her copyrighted photograph. (Plaintiff's Ex. 13).

54. The Defendant does not track data concerning visitors to its website such that it is able to identify whether individuals who view articles on its website go on to become customers. (Davidowicz Tr. 55:17-56:5, 73:16-20).

55. The Plaintiff is not able to track and identify individuals who came across her copyrighted photo on the Defendant's website and downloaded the photo for their own use without knowing to purchase a license from the Plaintiff because no photographer information was displayed. (Trial Testimony).

56. Defendant's counsel is on retainer, so it has not had to pay any additional fees associated with the lengths that it has gone to challenge the Plaintiff's claim to recover for the uncompensated copying and display of her copyrighted photograph on the Defendant's commercial website. (Dadvidowicz Tr. 80:11-16).

**II.     RULINGS OF LAW**

1. Defendant has conceded liability for infringement of Plaintiff's copyrighted photograph and has further conceded that Plaintiff's copyright registration is valid and enforceable. (PO Section iv, p. 7, ¶ 1).

2. Plaintiff timely registered her copyrights in the photograph at issue (Plaintiff's Ex. 1), prior to Defendant's infringement of that work, entitles Plaintiff to recover statutory damages under 17 U.S.C. § 504(c). *See* 17 U.S.C. § 412.

3. The Defendant had actual knowledge that Plaintiff was the photographer of the photograph selected, copied and uploaded to its website, and further had knowledge that it made no effort to obtain permission from the Plaintiff, or the Wall Street Journal on whose website it

found the Plaintiff's photo, before making commercial use of that work. Accordingly, Defendant's infringement was willful, entitling the Plaintiff to enhanced statutory damages, pursuant to 17 U.S.C. § 504(C)(2). *See Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1381-82 (2d Cir. 1993)("The Standard [for willful infringement] is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility.")(citation omitted). *See also L.A. Printex Indus., Inc. v. Does 1-10*, 543 Fed. App'x. 110, 111 (2d Cir. 2013)( "When a plaintiff can demonstrate, either directly or through circumstantial evidence, that the defendant had knowledge that his actions constituted infringement, or recklessly disregarded such possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. § 504(c)(2) may be awarded.").

4. Defendant's (i) failure to seek a license or other permission from Ms. Corson, or Wall Street Journal, to copy and display her copyrighted photograph on its website; (ii) failure to comply with its own Computer Use Policy's prohibition against violating any copyrights in using material found on the Internet; (iii) failure to instruct Eric Davidowicz, the employee charged with responsibility for populating its website blog with information found on the internet, about the requirements of copyright law, or even to discuss those issues with that employee; (iv) failure to pay the Plaintiff or the Wall Street Journal for the right to copy and use the plaintiff's copyrighted photograph and/or the WSJ Article; (iv) failure to provide any budget to Mr. Davidowicz to lawfully obtain rights to use the materials published on dozens of other websites in order to build the Defendant's brand by posting stories associate with luxury real estate and similar topics of interest to its customers; (v) failure to post any credit to the Plaintiff as photographer of the photo it copied and displayed, or even to have Mr. Davidowicz taught by computer staff how to make such an entry on the blog; and (vi) bad faith, responses to the

11
DM2\8490093.1

Plaintiff's notice of infringement and Complaint, by misleadingly representing that the photo was not visible on its website other than a brief period of time, even though it was still posted and accessible for many months through and including the time that Plaintiff provided her notice, and the unsubstantiated assertions of license and fair use rights that were only abandoned after months of litigation, amounts to the reckless disregard and willful blindness of the Plaintiff's copyrights in her photo, which constitutes willful infringement entitling the Plaintiff to enhanced statutory damages under 17 U.S.C. § 504(c)(2). *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001)( "reckless disregard of the copyright holder's rights . . . suffices to warrant award of the enhanced damages."). *See also Bryant v. Europadisk, Ltd.*, 91 USPQ2d 1825 (S.D.N.Y. Apr. 15, 2009), *aff'd*, 603 F.3d 135 (2d Cir. 2010), *cert. denied*, 562 U.S. 1064, 131 S.Ct. 656 (2010); *New York State Soc. of Certified Pub. Accountants v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 349 (S.D.N.Y. 1999) (finding willfulness where the defendant "fail[ed] to seek the advice of counsel" and instead proceeded on the basis of their own uninformed opinion); *see also*, *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 43 (S.D.N.Y. 2015) (upholding finding of willful infringement where corporation failed to train employees who were tasked with creating promotional materials that had a good chance of infringing on the rights of others).

5. Defendant's contention that its infringement was not willful, because Mr. Davidowicz erroneously believed that he did not need permission to copy and display copyrighted materials owned by others, he only needed to link back to a source (something he did not do with regard to his copying and displaying the Plaintiff's copyrighted photograph, in any event), is not sufficient to defeat a finding of willful infringement, because Defendant cannot establish that Mr. Davidowicz's personal misunderstanding of the copyright laws was

reasonable. *See Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990)("To refute evidence of willful infringement, [the defendant] must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief")(*citing* 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[B], at 14–40.3 (1989)), *cert. denied*, 498 U.S. 1109, 11 S.Ct. 1019 (1991).

6. Defendant is a sophisticated and profitable commercial enterprise, who makes broad claims of copyright protection in its own materials posted on line, so it was manifestly unreasonable to permit Mr. Davidowicz to be responsible for populating its website blog with content published by others, and related photographs created by others, with no understanding of the copyright laws and no resources to obtain lawful rights to use any of that material. *See Viacom Intern. Inc. v. Fanzine Intern., Inc.*, 2001 Copr. L. Dec. P. 28297, *4 (S.D.N.Y. Aug. 16, 2001) (finding willfulness given that defendant published numerous magazines and therefore "is or should be familiar with copyright law and particularly with the general practice of securing permission before reproducing copyrighted works"); *Castle Rock Entertainment v. Carol Pub. Group, Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997), *aff'd sub nom. Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998) (finding willfulness where the defendant book publisher was a sophisticated corporation with knowledge of the copyright laws); *Bryant v. Europadisk, Ltd.*, 91 USPQ2d 1825 (S.D.N.Y. Apr. 15, 2009), *aff'd*, 603 F.3d 135 (2d Cir. 2010), *cert. denied*, 562 U.S. 1064, 131 S.Ct. 656 (2010)("Courts have found willfulness (and the Second Circuit has affirmed) where sophisticated defendants knew or should have known that their conduct was infringing").

7. Defendant's claim of "innocent infringement" to reduce its liability for statutory damages is precluded, as a matter of law, based on Plaintiff's publication of her copyrighted

photograph with the copyright registration notice identified in the Copyright Act. 17 U.S.C. § 401.

8. Given the Defendant's reckless, at best, state of mind, serial infringements that helped promote and advance its luxury real estate brand without paying anything for all the content copied and posted by Mr. Davidowicz to its Talk of the Town blog, the inability to track and quantify the revenue Defendant earned by attracting customers to its website through viewing the infringed material, including the Plaintiff's copyrighted photo, the inability to track the number of licenses Plaintiff may have lost due to viewers downloading her copyrighted photograph from the Denfendant's website without obtaining a license from the Plaintiff, and Defendant's bad faith response to Plaintiff's notice of infringement and pursuit of meritless defenses that effectively drove up the cost of the Plaintiff's protection of her copyrights while costing the Defendant nothing, given that its counsel works on a retainer, this case calls for the award of substantial, enhanced statutory damages desiged both to compensate the Plaintiff for her damages and to act to deter further infringement by this Defendant and others who would act similarly. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952).

9. The Defendant's claim that the copyrighted photograph has limited license value does not favor a limited statutory damages award, because the Second Circuit has explained that, it has never held that there must be a direct correlation between statutory damages and actual damages. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014).

10. The Defendant's (i) serial infringements of various published works over many years with no compensation, (ii) refusal to acknowledge that Plaintiff has valid copyrights in her photograph, despite notice from her counsel and no facts supporting such challenge; (iii) refusal

14

DM2\8490093.1

to acknowledge that Defendant was not entitled to copy and display the Plaintiff's copyrighted photo and insistence that its removal of the photo from its website was merely an accommodation, while reserving all alleged rights concerning its use of the photo in the future, establishes an ongoing threat to Plaintiff's exclusive copyrights in the work at issue in this lawsuit and any other copyrighted works that Defendant might take and use for itself without seeking permission or paying for a license.

11. Plaintiff has established a likelihood of success, in fact actual success, on the merits of her infringement claim. Any further infringement by the Defendant threatens to cause the Plaintiff irreparable harm. The balance of harms weighs in favor of the Plaintiff, as the Defendant is only being enjoined to comply with the Copyright Act's existing requirements, and the public interest will be promoted in preventing further infringement of a copyright owner's rights, thereby promoting and protecting the public policy behind the Copyright Act. *See*, *eBay, Inc. v. MercExchange, L.C.C.,* 547 U.S. 388, 391 (2006).

12. Accordingly, Plaintiff is entitled to a permanent injunction prohibiting the Defendant, directly or indirectly, from infringing any copyrighted work owned by the Plaintiff by means of copying, displaying, or distributing Plaintiff's copyrighted photographs without Plaintiff's express permission, in violation of the Copyright Act, 17 U.S.C. § 106, et seq..

Dated: New York, New York
January 22, 2018

                                                Respectfully submitted,

                                                **DUANE MORRIS LLP**

                                                By: */s/ Kevin P. Potere*
                                                   Kevin P. Potere
                                                   1540 Broadway

New York, NY 10036-4086  
Telephone: 212 692 1000  
Fax: 212 692 1020  
Email: kppotere@duanemorris.com

Steven M. Cowley (*pro hac vice*).  
100 High Street, Suite 2400  
Boston, MA 02110-1724  
Telephone: 857 488 4200  
Fax: 857 488 4201  
Email: smcowley@duanemorris.com

*Attorneys for Plaintiff Lisa Corson*

### **CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018, a copy of the foregoing Plaintiff's Proposed Findings of Fact was served on the following parties by ECF:

Andrew P. Saulitis  
Law Offices of Andrew P. Saulitis P.C.  
40 Wall Street-37th Floor  
New York, New York 10005

*/s/ Kevin P. Potere*  
Kevin P. Potere
