Andrew P. Saulitis
LAW OFFICES OF
ANDREW P. SAULITIS P.C.
*Attorneys for Defendant*
  *Brown Harris Stevens of the Hamptons, LLC*
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
apslaw@msn.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

**LISA CORSON,**

                              Plaintiff,

                                                              1:16-cv-00545-AKH

              —against—

**BROWN HARRIS STEVENS OF THE
HAMPTONS, LLC,**

                              Defendant.

------------------------------------------------------------x

### DEFENDANT'S PROPOSED FINDINGS
### OF FACT AND CONCLUSIONS OF LAW

        Pursuant to Fed. R. Civ. P. 52 (a) and in accordance with Item 3 (B) (iii) of the Individual

Rules of the Honorable Alvin K. Hellerstein, defendant Brown Harris Stevens of the Hamptons,

LLC ("BHSH"), by its undersigned attorneys, submits the following proposed findings of fact

and conclusions of law in connection with the trial, non-jury, of this action, scheduled for

January 24, 2018. BSHS reserves the right to submit additional proposed findings and

conclusions and/or to amend this submission.

<u>Proposed Findings of Fact</u>

        1.  This action involves a single "blog" posting of an on-line Wall Street Journal

article that included a photograph taken by the plaintiff, commissioned by the Wall Street Journal, which the plaintiff had copyright-registered. While the license fee for the photograph (along with others from the same photoshoot) was no more than $600, and while defendant made no profit or revenue from the posting, and while the article and photograph were immediately taken down when copyrighted status was brought to the defendant's attention, the plaintiff asserts, nevertheless, that this amounted to "willful infringement" under 17 U.S.C. § 504(c)(2), for which she should be awarded substantial statutory damages far in excess of any license fee, attorneys' fees and other relief. Defendant has not contested, and has conceded, that the posting of the photograph with the article was infringing, but asserts that it was innocent and/or non-willful, that it acted in good faith and without knowledge of plaintiff's copyright, took prompt remedial steps, and, in any event, that statutory damages, in any event, should be no more than a three-to-five times multiple of a reasonable license fee (at most $600) or the statutory maximum of $200 for innocent infringement. Defendant asserts that under the circumstances of this case, no attorneys' fees or other relief are warranted. Also, defendant made early-stage offers of judgment exceeding a five-fold multiple of license fees, barring recovery of attorney's fees under Fed. R. Civ. P. 68.

      2.  Plaintiff Lisa Corson ("Corson") is a freelance photographer who lives and works at 201 E. Ojai Avenue, Ojai, California 93024. AJPTO viii (1) (stipulated facts).

      3.  Defendant Brown Harris Stevens of the Hamptons, LLC ("BHSH"), a New York limited liability company, is a New York State licensed real estate brokerage, the main office of which is located at 27 Main Street, East Hampton, New York 11937, in Suffolk County. It specializes in sales and rentals in East Hampton and vicinity. AJPTO viii (2) (stipulated facts). It maintains a website: https://bhshamptons.com. AJPTO viii (2) (stipulated facts). The website

-2-

included a web log (or "blog"—a regularly-updated web page) called "Talk of the Town" that contained postings of general interest, not related to any real estate listings. *See* Pl.'s Ex. 5.

4.  In March 2013, Corson entered into a Freelance Agreement dated March 2, 2013 with Dow Jones & Company, Inc., which publishes the Wall Street Journal, in print and on-line versions. Pl.'s Ex. 2; AJPTO viii (4) (stipulated facts).

5.  Under the Freelance Agreement, Corson was "commissioned . . . to shoot original photographs for use in all print and online editions of The Wall Street Journal ('WSJ') throughout the world, and to provide complete and accurate information for captions for each of the photographs (the 'Photographs')." Pl.'s Ex. 2.This was a standby agreement upon which the WSJ could request Corson's services for specific projects from time to time, for negotiated creative fees. *See* Pl.'s Ex. 2.

6.  Under the Freelance Agreement, "[i]n each instance, a specific rate will be set out for [Corson's] work (the 'Fee')" and "[t]he Fee, time for delivery of the Photographs, reimbursable expenses, and other incidental matters related to the Photographs as agreed shall be recorded in a separate writing between [Corson] and Dow Jones." Pl.'s Ex. 2.

7.  Under the Freelance Agreement, Corson "grant[ed] and assign[ed] Dow Jones a perpetual license to publish, republish, edit, crop, alter and/or prepare derivative works of the Photographs or portions thereof, in all editions of WSJ throughout the world, in all languages, and in all media whether now known or hereafter devised (including but not limited to print, Internet, video, CD-ROM, mobile application, microfilm and microfiche), for any purpose, including in connection with the publication, advertising, and promotion of WSJ or the article or other content with which the Photographs initially appear in WSJ, and to make such other promotional use as Dow Jones may determine." Pl.'s Ex. 2.

8.   Under the Freelance Agreement, Corson "further agree[d] that Dow Jones may grant third parties a license to republish the Photographs in connection with the article or other content with which the Photographs initially appear in WSJ." In other words, Corson gave up her exclusive rights to any "Photographs." Pl.'s Ex. 2.

9.   Under the Freelance Agreement, Corson "agree[d] that [she] will not publish the Photographs or license to others the right to publish the Photographs until the later of (a) twenty-one (21) days following Dow Jones's first-time publication of the Photographs or (b) [her] receipt of a written communication from Dow Jones stating that it will not publish the Photographs." Pl.'s Ex. 2.

10.     In early March 2015, a photo editor named Dana Kien at The Wall Street Journal had arranged a home and portrait shoot in Beverly Hills for a section cover story on luxury "SPEC homes" and she was looking for home exteriors, property features (gardens, pools, scenic views, etc), as many interiors as possible and portraits of the seller and possibly the developer of the property and possibly shooting video. Def.'s Ex. A.

11.     Ms. Kien requested Corson to do the photography at the photoshoot for $600 ($400 day rate x 1.5) + $50 video footage + 49 cents per mile for travel." Def.'s Ex. A. Corson accepted the assignment at those rates, and also agreed to do video for an additional $100. Def.'s Exs. A, B.

12.     The photoshoot was scheduled for March 11, 2015 at 2:00 p.m. at 9945 Beverly Grove, Beverly Hills, California. Def.'s Ex. A.

13.     At the photoshoot, Corson took multiple digital (.jpg) photographs of the premises, including of a swimming pool and bar area at the property, and on March 13, 2015 uploaded all of the digital images in .jpg format to the photo editor, under the license provided

for in the Freelance Agreement. Def.'s Ex. A.

14.      On the same day, March 13, 2015, Corson invoiced the Wall Street

Journal for her services and expenses in the total amount of $787.83, comprising a "Creative fee"

of $600.00 for the "Photographs" and a "Video fee" of $100.00" and reimbursement for

"Mileage: 160 miles @ $.49/mile 78.40" and for "Meals 9.43," which the Wall Street Journal

paid. Def.'s Ex. B.

15.      Corson has not licensed or sold the subject photograph or any derivative

works thereof to anyone else, nor has offered it for license or sale. Corson Test.

16.      While Corson displays the photograph, among others, on her website, she

has received no offers to purchase or license the photograph from any third parties. Corson Test.

17.      There is no evidence as to the license value of the subject photograph (or

similar photographs) other than what Corson made from the March 11, 2015 photoshoot, for

which she received a total of $600, for innumerable photographs. Def.'s Ex. B.

18.      On March 18, 2015, Corson applied for registration of the a group of

photographs described as "March 2015 unpublished photographs," as contained in an

uploaded 41979452 KB file, and the United States Copyright Office issued a Certificate of

Registration bearing registration number VAu 1-206-511 effective as of that day. Pl.'s Ex. 1;

AJPTO viii (7) (stipulated facts). The "March 2015 unpublished photographs" included the

subject photograph.

19.      A week later, the Wall Street Journal used four of Corson's photographs

from the photoshoot for an article published on March 20, 2015, entitled "The Race to the

$100 Million Spec House," in both print and online editions (the "WSJ Article"). The article

included the subject photograph, along with fifteen photographs taken by others (all in a

"slide show" in the on-line edition). AJPTO viii (8) (stipulated facts).

20.     At the time, BHSH's web site (www.bhshamptons.com) contained a web log (blog) called "Talk of the Town," AJPTO viii (10) (stipulated facts), which was maintained by Erik Davidowicz, BHSH's Director of Advertising. Davidowicz Test.

21.     On the day the WSJ Article appeared on-line, March 20, 2015, Davidowicz saw the WSJ Article and posted it on the blog, by copying the article and the subject photograph and "pasting" them onto the blog along with a hyperlink to the online article itself, which contained the photograph and attribution to Corson. He used "WordPress," a commonly-available web publishing application. Davidowicz Test.

22.     BHSH and its affiliates maintained a Social Media Policy. Def.'s Ex. C; Davidowicz Test.

23.     The Social Media Policy provides, under "Usage of Trademarks and Copyrights" that "If you use any third party . . . copyrighted materials, please remember to give proper credit or provide a link to a site if the materials were available on line." Def.'s Ex. C.

24.     The article along with the subject photograph (and link to the original) appeared in March or April of 2015 on the blog, along with other postings. Since the blog was updated periodically, and only the six or so most recent blog posts appeared, as older posts disappeared from view. Davidowicz Test.

25.     Sometime later in 2015, Corson used an on-line company called ImageRights (https://www.imagerights.com) that scours the Internet to find any use of images, for which ImageRights would recommend litigation, upon which "ImageRights will engage with and manage the proceedings with the attorneys, agents and/or foreign sub-agents," with "[t]he choice of legal representation and the terms under which it engages its legal representation"

being "at ImageRights' sole discretion." ImageRights does this for a percentage (generally 45%) of any recovery. Def.'s Ex. F.

26.     In mid-December 2015, ImageRights arranged to have attorneys (Duane Morris LLP) to make demands in Corson's behalf with regard to the subject photograph. *See* Def.'s Ex. F; Corson Test.

27.     On January 4, 2016, Steven M. Cowley, Esq. of Duane Morris LLP contacted BHSH and its parent company's general counsel, advised that the subject photograph was copyrighted to Corson and requested that the photograph be removed from BHSH's web site. Pl.'s Ex. 11.

28.     BHSH immediately caused the WSJ Article including the photograph to be permanently removed from the BHSH web site, rendered permanently invisible, which never used for any other purpose (except to preserve the in the event of litigation). Davidowicz Test. BHSH used the services of an outside web technician to make sure this was done properly. Davidowicz Test.

29.     BHSH has not sought to use the photograph (or the WSJ Article) for any purpose, and has no intention of doing so. Davidowicz Test.

30.     The January 2016 demand was the first and only time anyone had requested to have a photograph taken down from the BHSH blog (which is no longer in existence). Davidowicz Test.

31.     There had been no other lawsuits in which BHSH had been sued for copyright or trademark infringement. Davidowicz Test.

32.     Nor have there been any other lawsuits in which BHSH itself has sued for copyright or trademark infringement. Davidowicz Test.

33.     Davidowicz himself had never copyrighted a photograph for BHSH or for himself. Davidowicz Test.

34.     BHSH has not generated any revenue from use of the subject photograph on the blog or otherwise. Davidowicz Test. Davidowicz Test.

35.     The subject photograph did not depict a property for which BHSH or any affiliate was a broker or agent. Davidowicz Test.

36.     BHSH did not generate any advertising revenue from the blog. Davidowicz Test. Davidowicz Test.

37.     BHSH immediately removed Corson's photograph along with the entire blog post when it learned that the photograph had been copyrighted by Corson. Davidowicz Test.

38.     Davidowicz included the hyperlink to the original article in the blog post in keeping with company Social Media Policy, which provides that "If you use any third party . . . copyrighted materials, please remember to give proper credit or provide a link to a site if the materials were available on line." Davidowicz Test.Davidowicz never did anything to suggest that the photograph or the article were his own, and gave attribution to the Wall Street Journal and provided a hyperlink to the article on the Wall Street Journal's website, which contained all of the photographs with attribution to Corson and others. Davidowicz Test.

39.     Nevertheless, ImageRights directed the commencement and prosecution of this action on Corson's behalf, using the Duane Morris firm, as appointed by ImageRights. *See* Def.'s Ex. F.

40.     In this action, BHSH has conceded liability as follows: "BHSH is not contesting liability to the extent that it is conceded that plaintiffs photograph was copyright-registered effective March 18, 2015 and that the on-line WSJ article "The Race to the $100

Million Spec House" dated March 20, 2015, which contained plaintiff's .jpg photograph, was posted on a blog ("Talk of the Town") on BHSH's web site (under the URL www.bhshamptons.com/newslrace-100-millionspec-house/) on that date along with a link to the WSJ article, later removed. It is not conceded, and is contested, that this was willful, nor are damages, if any, conceded, nor that BHSH had actual or constructive notice of any copyright. (The source of the photograph was the WSJ article, which was posted as part of the article, not separately.)" AJPTO iv (Def. 1).

41.    The Duane Morris firm increasing demands for money exceeding the license fee for the photograph by orders of magnitude, threatening to seek ever-increasing amounts of attorneys' fees if BHSH did not capitulate.

42.    On June 7, 2016, before there had been significant litigation, BHSH served an Offer of Judgment by which it offered to allow Corson to take a judgment against it in this action for the total sum of $3,000.00, inclusive of interest, attorney's fees and expenses and all costs accrued to the date of the offer for Corson's claims. Def.'s Ex. G. G. This was more than five times Corson's license fee for the entire photoshoot, comprising hundreds of photographs. *See* Pl.'s Ex. 2; Def.'s Exs. A, B.

43.    Corson's attorneys rejected the Offer of Judgment.

44.    On January 18, 2017, BHSH served a further Offer of Judgment by which it offered to allow Corson to take a judgment against it in this action for the total sum of $5,000.00, inclusive of interest, attorney's fees and expenses and all costs accrued to the date of this offer for Corson's claims. Def.'s Ex. H.This was more than eight times Corson's license fee for the entire photoshoot, comprising hundreds of photographs. *See* Pl.'s Ex. 2; Def.'s Exs. A, B.

45.    Corson's attorneys rejected the second Offer of Judgment as well.

46.    BHSH did not waste the Court's resources by disputing that it had used Corson's copyrighted images without prior authorization for the blog post, nor has it asserted frivolous defenses.

47.    BHSH did not seek discovery from Corson and cooperated with her discovery demands.

48.    There were no discovery issues raised with the Court throughout the litigation, other than an extension for Corson to complete BHSH's deposition. ECF Doc. No. 15.

49.    Despite well-known legal impediments, and the Court's admonitions, Corson proceeded to fully litigate a motion for summary judgment (ECF Doc. Nos. 16-37), which was denied. Order dated June 13, 2017 (ECF Doc. No. 38).

50.    BHSH conceded liability at an early stage of this case (and prior to any motion practice), and has only contested willfulness and enhanced statutory damages, in good faith.

<u>Proposed Conclusions of Law</u>

1.    To establish a *prima facie* case of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Davis v. Gap, Inc*., 246 F.3d 152, 158-59 (2d Cir. 2001) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01, at 13-6 (1999)). "Anyone who violates any of the exclusive rights of [a] copyright owner" is liable for infringement. 17 U.S.C. § 501(a).

2.    BHSH has conceded, and has not contested, liability for infringement as follows:

BHSH is not contesting liability to the extent that it is conceded that plaintiffs photograph was copyright-registered effective March 18, 2015 and that the on-line WSJ article "The Race to the $100 Million Spec House" dated March 20, 2015, which contained

plaintiff's .jpg photograph, was posted on a blog ("Talk of the Town") on BHSH's web site (under the URL www.bhshamptons.com/newsIrace-100-millionspec-house/) on that date along with a link to the WSJ article, later removed.

However:

It is not conceded, and is contested, that this was willful, nor are damages, if any, conceded, nor that BHSH had actual or constructive notice of any copyright. (The source of the photograph was the WSJ article, which was posted as part of the article, not separately.)

This leaves the issues of "willfulness" *vel non* and damages to be tried.

3.    Did Davidowicz's and BHSH's conduct amount to "willful" copyright infringement under 17 U.S.C. § 504(c)(2) (providing for enhanced damages only "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully"); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) ("To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." (internal quotation marks omitted))?

4.    Or was this essentially a case of "innocent" infringement under 17 U.S.C. § 504(c)(2)? *See Broad. Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 197 n.10 (S.D.N.Y. 2016) ("where the defendant proves that he 'was not aware and had no reason to believe that his . . . acts constituted an infringement,' the Court may reduce the award of statutory damages to a sum of not less than $200. 17 U.S.C. § 504(c)(2)").

5.    Or, alternatively, was there "non-willful" copyright infringement under 17 U.S.C. § 504(c)(1)?

6.    In all events, "'a finding of liability is not a lottery ticket. In all instances, the relief should match the proof.'" *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-CV-7634 (JMF), slip op. at 21, 2017 U.S. Dist. LEXIS 182024, *30-31 (S.D.N.Y. Nov. 2, 2017) (quoting *4 Nimmer on Copyright* § 14.01[C][1] (2017)); *see also Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 U.S. Dist. LEXIS 112436, *32-33 (S.D.N.Y. Aug. 13, 2014).

7.    As to statutory damages of any kind, the trial involves application of the six factors prescribed by the Second Circuit in *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010):

a.    "(1) the infringer's state of mind;"

b.    "(2) the expenses saved, and profits earned, by the infringer;"

c.    "(3) the revenue lost by the copyright holder;"

d.    "(4) the deterrent effect on the infringer and third parties;"

e.    "(5) the infringer's cooperation in providing evidence concerning the value of the infringing material;" and

f.    "(6) the conduct and attitude of the parties."

8.    Davidowicz was not aware that the WSJ Article contained photographs copyrighted by Corson, and believed, albeit mistakenly, that he could include the article and its photograph in the blog with attribution to the Wall Street Journal and a hyperlink to the on-line article itself. His purpose his reason for posting the article was that it pertained to real estate and he thought that it would be of general interest so someone looking at the blog. He did not suggest that he was either author of the article (which contained a by-line) or that he was the photographer (who was identified in the article itself, to which there was a direct link). There is no evidence that Davidowicz sought to misappropriate anything, or to take away credit of

authorship from anyone. He was simply sharing an article the way millions of people do in social media.

9.    There is no "deterrent effect." BHSH immediately removed the article and photograph when it was informed that someone claimed copyright, and has acknowledged there was infringement, and no longer publishes the blog. It offered compensation to Corson many times what she has already made from the photograph.

10.    BHSH has offered cooperation, has provided full discovery as to whether there were any profits (though there were none), did not seek discovery from Corson or challenge the license fee she received. It has litigated in good faith, and only over material, defensible issues.

11.    The photograph did not depict property for which BHSH had a listing, and the property depicted was in California, where BHSH did not do business. BHSH did not save any expenses, nor earn any profits from its posting of the article. It did not garner any advertising revenue. There is no evidence that BHSH profited in any way from the blog post.

12.    Corson earned a creative fee for the photoshoot, and ceded to the Wall Street Journal the right to "grant third parties a license to republish the Photographs in connection with the article or other content with which the Photographs initially appear in WSJ." Pl.'s Ex. 2. She has given up her exclusive rights. She has not sought to license the photograph anywhere else, nor has received any offers from anyone to do so. It remains in her portfolio.

13.    Also relevant to the issue of "willful" versus "non-willful" (or "innocent") infringement was Davidowicz's providing a "hyperlink" to a site containing copyrighted material, in keeping with company copyright guidelines. There is a good faith basis that this does not constitute direct infringement. *See*, *e.g.*, *MyPlayCity, Inc. v. Conduit Ltd.*, No. 1:10-cv-1615-CM, 2012 U.S. Dist. LEXIS 47313, *37 (S.D.N.Y. Mar. 30, 2012) ("merely providing a 'link' to

a site containing copyrighted material does not constitute direct infringement of a holder's distribution right.") (citing *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007), *Arista Records, Inc. v. MP3Board, Inc.*, No. 1:00-cv-4660-SHS, 2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 29, 2002) (linking to content does not implicate distribution right and thus, does not give rise to liability for direct copyright infringement); *In re Aimster Copyright Litig.*, 334 F.3d 643, 646-47 (7th Cir. 2003), *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV 99-7654 HLH (BQRX), 2000 U.S. Dist. LEXIS 4553 (C.D. Cal. Mar. 27, 2000), and *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 (N.D. Cal. 2004)); *Pearson Educ., Inc. v. Ishayev*, 963 F. Supp. 2d 239, 251 (S.D.N.Y. 2013).

14.   While Corson's has elected to seek only statutory damages, "actual damages" (here, her license fee for the subject photograph) are relevant purposes of assessing the proper amount of statutory damages. Where a plaintiff elects statutory damages, an "estimat[e] . . . of actual damages" is "then use[d] as an anchor for assessing an appropriate amount of statutory damages." *Philpot v. Music Times LLC*, No. 1:16-cv-1277-DLC-DF, 2017 U.S. Dist. LEXIS 48454, *24 (S.D.N.Y. Mar. 29, 2017); *see also Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001) (courts must not base actual damages on "undue speculation" but should instead look to the fair market value of the copyrighted work).

> Although there need not be a "direct correlation between statutory damages and actual damages," *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014), the statutory award should bear "some relation to actual damages suffered." *Cengage Learning*, 2015 U.S. Dist. LEXIS 119322, 2015 WL 5167775, at *4 (quoting *Van Der Zee v. Greenidge*, 2006 U.S. Dist. LEXIS 400, 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006)). Where the infringement was willful but not "truly egregious," courts in this Circuit frequently award statutory damages "of between three and five times the cost of the licensing fees the defendant would have paid." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) (Engelmayer, J.) (collecting cases and

> awarding "approximately five times the sum of BMI's unpaid licensing fees").

>         . . . . Damages within the usual range of three to five times the forgone licensing fee will be sufficient not only to compensate plaintiff for the fee she lost—and the time that has elapsed since that fee should have been paid—but also to punish the infringer and to deter other potential infringers contemplating comparable conduct. *See Noble*, 2015 U.S. Dist. LEXIS 130391, 2015 WL 5697780, at *7 (awarding statutory damages "sufficient to compensate [plaintiff] for any damages he suffered, to strip the defendants of any ill-gotten gain and to deter similar infringements in the future").

*Reilly v. Plot Commerce*, No. 1:15-cv-05118-PAE-BCM, 2016 U.S. Dist. LEXIS 152154, *25-26 (S.D.N.Y. Oct. 31, 2016) (report and recommendation) (recommending award of $15,000 in statutory damages where the license fee would have been $3,052, *i.e.*, less than 5X multiplier for *willful* infringement), *adopted by, costs and fees proceeding at, certificate of appealability denied*, 2016 U.S. Dist. LEXIS 160884 (S.D.N.Y. Nov. 21, 2016). "Even in cases of willful infringement . . . the rule-of-thumb of awarding statutory damages of three to five times the plaintiff's licensing fees is commonly applied." *Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 48454 at *27; *see also*, *e.g.*, *Nat'l Photo Grp., LLC v. Bigstar Entm't, Inc*., No. 1:13-cv-5467-VSB-JLC, 2014 U.S. Dist. LEXIS 50790, *10-11 (S.D.N.Y. Apr. 11, 2014) (where willfulness was established by defendant's default, finding statutory damages award of treble the plaintiff's licensing fees to be sufficient to punish defendant and to deter future infringement) (Cott, Mag. J.) (report and recommendation), *adopted*, 2014 U.S. Dist. LEXIS 143992 (S.D.N.Y. Oct. 8, 2014) (Broderick, J.); *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest. Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010) ("[C]ourts have awarded statutory damages of more than double the amount of unpaid licensing fees, especially in circumstances where the infringement was not innocent."); *Barcroft Media, Ltd. v. Coed Media Group, LLC*, slip op. at

20, 26, 2017 U.S. Dist. LEXIS 182024 at *29, *37 (noting that "courts often impose as statutory damages a multiple of the applicable licensing fee a defendant would have paid but for the infringement" and that "'Second Circuit case law . . . reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid" and also noting that a "plaintiff's request for statutory damages in the amount of six times the sum of unpaid licensing fees" was rejected "because 'plaintiffs have not explained the basis for exceeding that customary norm'") (quoting *Broad. Music, Inc. v. Prana Hospitality, Inc*., 158 F. Supp. 3d at 199). The facts of this case do not warrant a departure from the type of statutory damages commonly awarded in this district, and, given BHSH's immediate removal of the photograph, do not present a case for deterrence.

15.   Here, at most, a reasonable license fee for the photograph was no more than $600, if not a fraction of that, because Corson licensed multiple photographs for that sum, of which the Wall Street Journal selected four for publication. Corson has offered no evidence for a higher license value. Thus Corson's statutory damages, even for willful infringement, should be no more than a three-to-five times multiple of that, if not the statutory minimum, whether $200 for innocent infringement, or $750 for willful infringement under the circumstances presented.

16.   While Corson relies on *Psihoyos v. John Wiley & Sons, Inc*., 748 F.3d 120, 127 (2d Cir. 2014), in that case, in affirming denial of a remittitur motion against a significant amount of statutory damages awarded by a jury, the court noted that a textbook publisher (Wiley) that used plaintiff's photographs in a published textbooks had "earned substantial profits, and the jury may have viewed Wiley as a repeat infringer in need of deterrence," thus leaving undisturbed the jury's award of statutory damages (though it is not possible to tell from

the record whether the award exceeded a three-to-five-times multiple). In the district court, the plaintiff had "presented an array of evidence indicating that Defendant made no effort to curb its infringement after becoming aware that Plaintiff's photographs had been used without license or that books had been printed exceeding Defendant's license" and that "Defendant systematically and knowingly, or at least recklessly, exceeded its licenses" and "has violated license agreements with photographers on numerous other occasions . . . . as well as evidence that could be construed as indicating that Defendant may have attempted to cover up its infringements" and that "the jury heard evidence suggesting that Defendant had willfully committed numerous infringements, had failed to adopt copyright compliance policies, and had continued to distribute copies of Plaintiff's images even after determining that it was infringing." No. 1:11-cv-1416-JPO, 2012 U.S. Dist. LEXIS 162822, *5-6, *11 (S.D.N.Y. Nov. 7, 2012).

17.    There is no case in this Circuit in which a three-to-five times multiple of a reasonable license fee has been awarded, absent extraordinary circumstances not present here.

18.    Corson also seeks costs and attorney's fees pursuant to 17 U.S.C. § 505. However, "[f]ee awards [in copyright infringement cases] are not 'automatic' or granted as 'a matter of course,' but rather are committed to the discretion of the court." *Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 1:16-cv-07634-JMF, slip op. at 1-2, 2018 U.S. Dist. LEXIS 4541, *2-3 (S.D.N.Y. Jan. 10, 2018) (quoting *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534, 127 L. Ed. 2d 455, 114 S. Ct. 1023 (1994)); *see also Boisson v. Banian Ltd*., 221 F.R.D. 378, 381 (E.D.N.Y. 2004) ("even prevailing party status, standing alone, does not require an award of fees in a copyright action") (citing *Fogerty v. Fantasy, Inc*., 510 U.S. at 534 ("equitable discretion should be exercised in light of the considerations [the Court has] identified"). Even where a prevailing party seeks fees and costs, the Court has discretion to withhold an award, *see Fogerty v. Fantasy,*

*Inc.*, 510 U.S. at 534, and fees have been withheld in their entirety even for prevailing parties

(see below).

> Among the factors that inform a court's decision about whether to
> award attorney's fees are "frivolousness, motivation, objective
> unreasonableness[,] and the need in particular circumstances to
> advance considerations of compensation and deterrence."
> [*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985
> (2016)] (alteration in original) (citing *Fogerty*, 510 U.S. at 534
> n.19). Although a district court should give "substantial weight to
> the objective reasonableness of the losing party's position" in
> determining whether attorney fees are appropriate, it "must also
> give due consideration to all other circumstances relevant to
> granting fees." *Id*. at 1983

*Barcroft Media, Ltd. v. Coed Media Group, LLC*, slip op. at 2. Courts have declined to award

fees where, in addition to lacking willfulness, the defendants acted in good faith in resisting the

claim. *See*, *e.g.*, *id.*, *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 304-05

(S.D.N.Y. 2001) (finding that defendants' infringing actions were "innocent"); *see also GMA

Accessories, Inc. v. Olivia Miller, Inc.*, 139 Fed. Appx. 301, 304-05 (2d Cir. 2005) ("In setting a

fee award of $5,000, the district court relied on, *inter alia*, GMA's three-week delay in bringing

its suit; the small size of actual damages; the limited scope of the infringement; and counsel's

belated attempt to accept an offer of judgment only after learning of the size of the statutory

damages award. Chief Judge Mukasey did not abuse his discretion in awarding less than the full

measure of attorney's fees sought."), *cert. denied*, ___ U.S. ___, 2006 U.S. LEXIS 1212

(Feb. 21, 2006).

In *Barcroft Media, Ltd. v. Coed Media Group, LLC*, "considering the totality of

circumstances," Judge Furman declined to award *any* fees or costs to the prevailing plaintiff,

despite a substantial application for same, in a thoroughly reasoned opinion, for multiple reasons.

Slip op. at 3-8, 2018 U.S. Dist. LEXIS 4541 at *3-11 (no fees awarded despite liability for

copyright infringement after month-long bench trial); *Janik v. SMG Media, Inc.*, No. 1:16-cv-7308-JGK-AJP, 2018 U.S. Dist. LEXIS 4567 (S.D.N.Y. Jan. 10, 2018) (*no attorneys' fees* to prevailing defendant); *Psihoyos v. John Wiley & Sons, Inc*., No. 1:11-cv-1416-JPO, 2013 U.S. Dist. LEXIS 45877 (S.D.N.Y. Mar. 29, 2013) (no attorneys' fees awarded despite jury verdict in plaintiff's favor on willful infringement and significant damages), *reconsideration denied*, 2013 U.S. Dist. LEXIS 118863 (S.D.N.Y. Aug. 19, 2013).

19.    The actual billing arrangement (engagement agreement) and amounts paid for attorneys' fees and costs is also significant under 17 U.S.C. § 505 on a fee determination.  "[F]or prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" *Crescent Publ'g v. Playboy Enters., Inc*., 246 F.3d 142, 151 (2d Cir. 2001); *see also Denim Habit, LLC v. NJC Bos., LLC*, No. 1:13-cv-6084-ADS-SIL, 2016 U.S. Dist. LEXIS 67387, *13-14 (E.D.N.Y. May 23, 2016) ("evidence of the amounts that [plaintiff] has actually paid to [its attorneys] is relevant to the reasonableness of the claim"); *Video-Cinema Films, Inc. v. Cable News Network, Inc*., 1:98-cv-7128, -7129, -7130-BSJ, 2004 U.S. Dist. LEXIS 1428, *13-15 (S.D.N.Y. Feb. 3, 2004) (refusing to award attorneys' fees beyond those actually paid by the prevailing party. "Even though the Court finds DWT's hourly rates reasonable, it declines to award the full amount of fees that DWT requests because CNN did not pay this amount . . . . The Court finds that awarding more than CNN paid pursuant to the fee agreement here would amount to a windfall for CNN and a penalty against plaintiff."); *Famous Music Corp. v. 716 Elmwood, Inc*., No. 05-CV-0885A(M), 2007 U.S. Dist. LEXIS 96789, *34 (W.D.N.Y. Dec. 28, 2007).

20.    Corson has not presented evidence of her actual billing arrangement, if any, with the Duane Morris firm, which was appointed by ImageRights, nor that she has paid any bills or actually incurred any obligation for attorney's fees.

21.    Under the circumstances, an award of attorneys' fees and costs, in the Court's discretion, is declined. *E.g.*, *Barcroft Media, Ltd. v. Coed Media Group, LLC*, slip op. at 3-8, 2018 U.S. Dist. LEXIS 4541 at *3-11 (no fees awarded despite liability for copyright infringement after month-long bench trial); *Janik v. SMG Media, Inc.*, U.S. Dist. LEXIS 4567; *Psihoyos v. John Wiley & Sons, Inc.*, 2013 U.S. Dist. LEXIS 45877 (S.D.N.Y. Mar. 29, 2013) (no attorneys' fees awarded despite jury verdict in plaintiff's favor on willful infringement and significant damages).

22.    BHSH's rejected offers of judgment pursuant to Fed. R. Civ P. 68 (for more than five times her license fee) would also serve to substantially reduce Corson's claim for costs and attorney's fees. *See Marek v. Chesny*, 473 U.S. 1, 9, 105 S. Ct. 3012, 3016, 87 L. Ed. 2d 1, 9 (1985); *Boisson v. Banian Ltd.*, 221 F.R.D. 378, 380-81 (E.D.N.Y. 2004) ("*Marek* precludes a plaintiff from recovering attorneys' fees incurred after the making of the Rule 68 offer"); *Boorstein v. City of N.Y.*, 107 F.R.D. 31, 33 (S.D.N.Y. 1985) ("A rejected Rule 68 offer becomes part of the written record of the case and is used to determine attorneys' fees and costs awards at the close of the suit. If the judgment or settlement ultimately obtained by plaintiff is less than the Rule 68 offer, plaintiff cannot recover attorneys' fees or costs from the date the offer was made to the end of the suit."); *Wallert v. Atlan*, No. 1:14-cv-4099-PAE, 2015 U.S. Dist. LEXIS 13958 (S.D.N.Y. Feb. 5, 2015); *Marek*, 473 U.S. at 1105, S. Ct. 3012 at 3017, 87 L. Ed. 2d at 10 ("To be sure, application of Rule 68 . . . require[s] plaintiffs to 'think very hard' about whether continued litigation is worthwhile; that is precisely what Rule 68 contemplates.").

23.    Nor is Corson entitled to injunctive relief where BHSH immediately removed the subject photograph and has not used nor has threatened to use the photograph since and has no intention of doing so, and there is no evidence to the contrary.

24.    Corson is not entitled to prejudgment interest. "Whether the Copyright Act provides for awards of prejudgment interest is an open question in the Second Circuit. *See Barclays Capital Inc. v. Theflyonthewall.com*, 700 F. Supp. 2d 310, 329 (S.D.N.Y. 2010), *rev'd in part on other grounds*, 650 F.3d 876 (2d Cir. 2011)." *Psihoyos v. John Wiley & Sons*, Inc., 2013 U.S. Dist. LEXIS 45877 at *14 n.5 (declining to award prejudgment interest). Prejudgment interest is likewise declined here.

Dated:  January 23, 2018

Respectfully submitted,

Andrew P. Saulitis

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
40 Wall Street-37th Floor
New York, New York 10005
(212) 459-0900
Email: apslaw@msn.com

*Attorneys for Defendant Brown Harris*
*Stevens of the Hamptons, LLC*