UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA CORSON, <br><br> Plaintiff, <br><br> v. <br><br> BROWN HARRIS STEVENS OF THE HAMPTONS, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 1:16-CV-00545(AKH) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR AN AWARD OF COSTS AND ATTORNEYS FEES

Pursuant to Federal Rules of Civil Procedure 54(d) and 17 U.S.C. § 505, Plaintiff Lisa Corson ("Ms. Corson" or "Plaintiff"), as the prevailing party in this copyright infringement lawsuit, requests an award of costs totaling $6,017.46 and attorneys' fees in the amount of $131,267.50. In support of her Motion, Ms. Corson states as follows:

**I.     MATERIAL BACKGROUND FACTS**

On January 24, 2018, Ms. Corson prevailed after a one-day bench trial on her claim of copyright infringement against Defendant Brown Harris Stevens of the Hamptons, LLC ("Brown Harris Stevens" or "Defendant")). [ECF Nos. 50, 51]. This Court held Brown Harris Stevens' infringement to be willful, finding its disregard of Ms. Corson's copyrights to be "particularly egregious," and awarded Ms. Corson $25,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(2). [ECF No. 50].

Plaintiff initially informed Defendant of its infringement of her copyrights in a registered photograph that Defendant posted on its website by way of a demand letter served by her counsel on January 4, 2016. [Declaration of Steven M. Cowley dated February 22, 2018 ("Cowley

Decl.") Exh. 2]. Plaintiff's demand letter requested that Defendant cease further use of her copyrighted work and compensate her by paying $25,000 for the unauthorized use of her copyrighted photograph to date. [Id.]. In response, Defendant's General Counsel responded by representing that Ms. Corson's photograph only appeared on the Brown Harris Stevens website briefly in March or April 2015. [Cowley Decl. Exh. 3]. Defendant further suggested that Ms. Corson should address her concern to the Wall Street Journal as the source of Defendant's copy, and Defendant refused to pay any compensation to Ms. Corson's for its unauthorized use of her photograph. [Id.].

Defendant's representation that Plaintiff's photograph had appeared only briefly on the Brown Harris Stevens website only briefly in Marcy or April 2015 was false; Plaintiff's counsel had personally confirmed it still appeared on that website shortly before sending the demand letter. [Cowley Decl. ¶ 5]. Given no other option to resolve her claim, Plaintiff commenced this lawsuit.

Shortly after filing the lawsuit, Plaintiff's counsel conferred with Defendant's counsel about the possibility of accepting service of process. [Cowley Decl. ¶ 7]. During that phone call, Defendant's counsel specifically informed Plaintiff's counsel that Defendant was not offering anything to settle the case at that time and would never offer anything to settle the lawsuit beyond a nominal amount, because he worked on a retainer basis and Defendant would not have to pay any additional attorneys' fees to defend the case through trial. [Id.].

On April 1, 2016, Defendant filed its Answer, including fourteen affirmative defenses, including assertions that it was not liable for infringement because its copying was merely de minimis, was immune from liability as fair use, and because Ms. Corson's license to the Wall Street Journal to use her photograph and other efforts to license her work acted to grant

2

Defendant permission to copy and use her photograph. [ECF No. 9, at the Second, Eighth, Ninth and Tenth Affirmative Defenses]. Defendant also challenged Ms. Corson's registration of her copyright. [Id. at the Seventh Affirmative Defense].

On June 3, 2016, an initial scheduling conference was held and in response to the Court's inquiry as to parties' settlement positions, Plaintiff's counsel responded that Plaintiff authorized settlement of the case for $15,000. [Cowley Decl. ¶ 9]. Defendant's counsel responded by stating that his client had not authorized any settlement at that time but the most he anticipated it might offer was $5,000, because of its affirmative defenses. [Id.]. Then, on June 7, 2016, Brown Harris Stevens served an Offer of Judgment under Fed. R. Civ. Proc. 68 of only $3,000 (claiming that it would be in full satisfaction of all damages, costs, attorneys' fees and interest). [Cowley Decl. ¶ 10].

During the parties' October 2016 settlement conference, Plaintiff's counsel represented that he would recommend a $10,000 settlement to the Plaintiff if Brown Harris Stevens was willing to settle for that amount. [Cowley Decl. ¶ 11]. Despite confirming that settlement position the following week and inquiring as to Defendant's response, the Defendant never responded to Plaintiff's revised settlement position. [Id. ¶ 12].

During a scheduling conference on January 13, 2017, the Court permitted Plaintiff to file a motion for summary judgment and established a briefing schedule. The Court also instructed the Defendant to identify which Affirmative Defenses it would pursue and which it would drop. Despite that instruction, Defendant never specified which Affirmative Defenses it would not pursue, and insisted only on making a limited concession for whatever it meant. [Defendant's Opposing Memorandum of Law, ECF No. 31 at 1-2]. Even in the required pre-trial submission,

Defendant refused to specify that it waived affirmative defenses such as *de minimis* infringement, license, and fair use. [Joint Pretrial Statement, ECF No. 45, Exh. A].

On January 18, 2017, Brown Harris Stevens served a second Rule 68 Offer of Judgement, this time in the amount of $5,000, again, expressly including all damages, costs, attorneys' fees and interest in that amount. Defendant never made another settlement offer, or even discussed the possibility of settling this case short of a full trial. Instead, leading up to trial, Defendant insisted that it would demand a full jury trial [Joint Proposed Pre-trial Order, ECF No. 45 at 12] and only conceded to participate in a bench trial at the very last minute.

Notably, Plaintiff's initial settlement demand was in the exact amount awarded by this Court as statutory damages after trial - $25,000. Plaintiff repeatedly reduced that demand, but Defendant refused to offer anything more than $3,000 prior to forcing the Plaintiff to incur the full cost of discovery, including completing the Defendant's deposition and after Plaintiff began preparing summary judgment briefing. Even then, Defendant offered only one fifth of the amount awarded in damages.

During trial, it was revealed that Defendant's initial representation that the Wall Street Journal was its source for Ms. Corson's photograph – and the Defendant's affirmative defenses claiming the benefit of a license – were materially misleading. In fact, Defendant's representative admitted during trial that he took the Wall Street Journal article and Ms. Corson's photograph from the site without ever requesting permission, or paying for any license from the Wall Street Journal.

Ms. Corson has hired a copyright enforcement company – ImageRights International, Inc. ("ImageRights") to help her track and address infringements of her photographs. As she testified during trial, but for a company like ImageRights, she would not be able to locate uses of her

photographs, such as the Defendant's use of her photograph, where the infringer removes or omits her name. Based on Ms. Corson's contingent fee agreement with Duane Morris, the net recovery (after reimbursement of out-of-pocket expenses, and inclusive of all amounts for damages, costs, attorneys' fees and interest) shall be allocated 40% to Duane Morris for its contingent fee, and 60% to Ms. Corson, which amount she is obligated to share with ImageRights based on their services agreement. [Cowley Decl. Exh. 1 ¶ 3]. Based on the services agreement between Ms. Corson and ImageRights that is applicable to this case, her 60% of the net recovery is allocated 55% to Ms. Corson and 45% to ImageRights. [Declaration of Lisa Corson dated February 21, 2018 ("Corson Decl.") ¶ 4].

## II.     ARGUMENT

A prevailing party in a copyright action may be entitled to attorney's fees and costs. 17 U.S.C. § 505 ("the court may also award a reasonable attorney's fee to the prevailing party as part of the costs"). Whether the district court grants attorney's fees is soundly within the discretion of the court. *Id.*; *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1983 (2016). Although an award of attorney's fees is determined on a case-by-case basis, courts should consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence" in determining whether to grant attorney's fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994). The Supreme Court in *Kirstaeng v. John Wiley & Sons, Inc.* reaffirmed these factors and further made clear that the factors are non-exclusive and the court should use a totality of the circumstances test. *Id*. However, the Supreme Court also stated that the "reasonableness of a losing party's litigating positions" is given "substantial weight" in this test. *Id.*, at 1989. In addition to the factors listed by the Supreme Court, the courts

in the Second Circuit have held that "a defendant's willful infringement supports an award of attorneys' fees to a prevailing plaintiff." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 43 (S.D.N.Y. 2015) (collecting cases); *accord Kepner–Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999).

Further, the Supreme Court explicitly noted that a primary consideration when awarding attorney's fees is to advance the Copyright Act's goals. *Kirtsaeng*, 136 S. Ct. at 1986. One such goal of the Copyright Act is to deter infringement. *Id.*; *Beastie Boys*, 112 F. Supp. 3d at 44. Another, closely related goal, is to permit a copyright holder to "bring and maintain a suit even if the damages at stake are small." *Kirtsaeng*, 136 S. Ct. at 1986; *see Beastie Boys*, 112 F. Supp. 3d at 44 ([A] fee award helps ensure that an injured copyright holder is, at the end of the day, compensated for his injury").

Copyright holders are further permitted to obtain attorney's fees that exceed the damages award. *Manno v. Tennessee Prod. Ctr., Inc.*, 657 F. Supp. 2d 425, 435 (S.D.N.Y. 2009) (granting attorney's fees that exceeded statutory damage by over 9 times); *see also Rockford Map Publishers, Inc. v. Directory Serv. Co. of Colorado*, 768 F.2d 145, 150 (7th Cir. 1985) (affirming award of attorney's fees that exceeded statutory damage award by 88 times). Attorney's fees serve as a further deterrent against would-be infringers. *Beastie Boys*, 112 F. Supp. 3d at 44 ("Awarding such fees incents rather than deters potential plaintiffs: It serves to "satisfy the Copyright Act's purposes" because it will "encourage plaintiffs to litigate meritorious claims of copyright infringement" and, in turn, "encourage the origination of creative works by attaching enforceable rights to them") (internal quotation and citation omitted); *Manno*, 657 F. Supp. 2d at 435.

In this case, the award of the full attorneys' fees representative of the actual expense and costs that Ms. Corson and her counsel were forced to bear in order to protect her copyright is especially important, given that Defendant had engaged copyright defense counsel on a retainer, so that it would pay no additional fees for forcing the case to be maintained all the way through trial, avoid the real economic impact of its own unreasonable positions. Both *Manno v. Tennessee Production Center, Inc.* and *Beastie Boys v. Monster Energy Co.* are illustrative. In *Manno*, the Court awarded $47,272.94 in attorney's fees to the plaintiff along with $5,000 in statutory damages. *Manno*, 657 F. Supp. 2d at 434-35. In determining the appropriateness of attorneys' fees, the Southern District of New York highlighted that such an award was appropriate "[in] light of [the defendant's] willful disregard of [plaintiff's] copyright interest, the need to compensate [plaintiff] in pursuing this action, and the importance of deterring both [defendant] and others from engaging in copyright violations." *Id.*

In *Beastie Boys*, the Southern District of New York made similar considerations in deciding to award attorney's fees. There, the Court specifically assessed the objective reasonableness of Monster Energy's (the losing party) position, the willfulness of the underlying conduct, and whether the fee would compensate the Beastie Boys and deter Monster Energy. *Beastie Boys*, 112 F. Supp. 3d at 40-45. The Court held that Monster Energy acted objectively unreasonably in waiting "until the brink of trial" to concede liability because its liability was "open and shut." *Id.*, at 41. The refusal to concede liability until such a late stage protracted the litigation caused the Beastie Boys to incur unnecessary costs. *Id.*, at 43. The Court also found that Monster Energy willfully infringed the Beastie Boys' copyright which further supported an award of attorney's fees. *Id.*, at 43. Finally, The Court found that an award of attorney's fees

would help to deter infringement because of the mounting fees associated therewith. *Id.*, at 44-45.

Here, even more egregious than Monster Energy's late-stage concession, Defendant Brown Harris Stevens <u>never</u> conceded to waive affirmative defenses of implied and express license, *de minimis* infringement, failure to mitigate damages, etc. Defendant appeared to walk away from a challenge to Ms. Corson's copyright registration, but beyond that it steadfastly refused to be pinned down. Plaintiff had to prepare for trial to counter those facetious defenses, only to find that Defendant was not prepared to put on any evidence in support of those unwaived Affirmative Defenses.

Given the purpose of 17 U.S.C. § 505 and the holdings in *Manno* and *Beastie Boys*, an award of substantial attorneys' fees is necessary here. Otherwise, a plaintiff like Corson would never be able to enforce her copyright claims because an award of $25,000, while substantial, would be insufficient to cover the cost of enforcement.

The fees now sought by Corson are presumptively reasonable. The Second Circuit uses a lodestar rate, determined by the product of a reasonably hourly rate and the reasonably number of hours worked to create a "presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) *quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). Recently, courts within the Second Circuit have approved billings rates for partners as high as $800 per hour as reasonable for calculation of the lodestar. *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC,* No. 13 Civ. 2493, 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) (collecting cases). Average rates for second, third, and fourth year associates fall within $461 and $505 per hour. *Beastie Boys*, 112 F. Supp. 3d at 56. Here, Duane Morris' partner responsible for this case, Steven

Cowley, has twenty-eight years of litigation experience and a billing rate of $720.  [Cowley Decl. ¶ 16; Exh. 6]  The Duane Morris associates who worked on this case had five and eight years of experience and billing rates of $350 and $550, respectively.  [Id.].  The Duane Morris paralegals who assisted on this case had three to twenty-one years of experience and billing rates between $220 and $270.  [Id.].

**III.     CONCLUSION**

For all of the foregoing reasons, Ms. Corson requests that the Court award her the recovery of $6,017.46 to reimburse for the costs incurred, and $131,267.50 in attorneys' fees, required to successfully pursue her copyright infringement lawsuit.

Dated:  February 22, 2018

                Respectfully submitted,

                **DUANE MORRIS LLP**

                By:  /s/ Kevin P. Potere
                   Kevin P. Potere
                1540 Broadway
                New York, NY 10036-4086
                Telephone:  212 692 1000
                Fax: 212 692 1020
                Email: kppotere@duanemorris.com

                Steven M. Cowley (*pro hac vice*).
                100 High Street, Suite 2400
                Boston, MA 02110-1724
                Telephone: 857 488 4200
                Fax: 857 488 4201
                Email: smcowley@duanemorris.com

                *Attorneys for Plaintiff Lisa Corson*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2018, a copy of the foregoing Plaintiff's Memorandum of Law in Support of Her Motion for an Award of Costs and Attorneys' Fees was served on the following parties by ECF:

>Andrew P. Saulitis
>Law Offices of Andrew P. Saulitis P.C.
>40 Wall Street-37th Floor
>New York, New York 10005

>>*/s/ Kevin P. Potere*
>>Kevin P. Potere